**James Daniel SEARCY, Appellant–Respondent,**

**v.**

**Debra Jo SEARCY, Appellee–Petitioner.**

**No. 32A01–9105–CV–161.**

Court of Appeals of Indiana, First District.

Dec. 30, 1991.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, for appellant-respondent.

Robert A. Wood, Karen M. Love, Kendall, Wood, Lowry & Kessinger, Danville, for appellee-petitioner.

## MEMORANDUM DECISION

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

James Daniel Searcy ("Dan") appeals from a judgment for Debra Jo Searcy ("Debra"), modifying a child support order following their marriage dissolution. We affirm in part, reverse in part, and remand.

## ISSUES

We restate the issues on appeal as:

1. Did the trial court properly refuse to admit Dan's Exhibits F, H and I into evidence?

2. Did the trial court err in its award of trial and appellate attorneys' fees?

3. Was the trial court correct in using August 10, 1990 as the date for modification of child support?

4. Did the trial court award the proper amount of child support to Debra in following the Indiana Child Support Guidelines ("Guidelines") and considering the factors relevant to child support modification under IND.CODE § 31-1-11.5-17?

## FACTS

Dan and Debra were divorced on February 23, 1988. Debra was awarded sole custody of their three children, Brenda, Jason, and Adam. Until September 24, 1990, pursuant to court order, Dan had been paying child support to Debra in the amount of $300.00 per week. Thereafter, on September 28, 1990, Dan began paying $250.00 per week in child support.[1]

Dan has been a self-employed farmer since the late 1960's, and has been successful in this vocation. His average yearly income in the last several years has been between $70,000.00 and $75,000.00, except for the year 1989, in which Dan's yearly income was just under $30,000.00.[2] This noticeable decrease was caused by a severe drought in 1988. Dan follows a practice common among farmers, in that he usually retains crops harvested in one year and sells them early in the next calendar year, which is why the drought in 1988 was reflected in Dan's 1989 income figure. This practice also allows farmers to generally receive better prices for their crops, realize less income tax, and avoid property taxes.

In 1988, Dan's farming business experienced significant changes and Dan also remarried in August. The land Dan had been farming, approximately 560 acres, was farmed through a sharecropping agreement; in that year, however, the landowner sold the land, and Dan had to look for other land to farm. Dan was able to secure 425 acres of land to rent, and also purchased a 148 acre farm. Purchasing the farm cost Dan approximately $190,-000.00. The farm Dan purchased included a farmhouse, which Dan improved at a cost of approximately $20,000.00. Because of the expenses Dan incurred in 1988, he has taken out several loans.

About one week after school was dismissed for the summer in 1990, by agreement of the parties, Jason went to live with Dan. Thereafter, on August 10, 1990, Dan filed a petition for modification of the dissolution decree, asking for a modification of child custody and visitation rights, and a reduction in child support payments.

Hearings on Dan's petition were held on September 21, 1990 and November 7, 1990. At the hearings, Dan stated that he computed his gross weekly income as of November 5, 1990 to be $172.04 per week. Computing his child support obligation according to the Guidelines, Dan arrived at a weekly figure of $19.85. To arrive at this figure, Dan deducted a support payment from Debra since Dan has custody of Jason. However, Dan also stated that he has the use of more than $172.00 per week. Dan admitted that Debra requires more than approximately $20.00 per week to support the two children remaining in her care, and that the children's expenses have increased considerably since the original dissolution decree.

Debra is self-employed as an interior decorator. Her average weekly gross income is $250.00. Her computation of Dan's child support payment, based on the parties' in-

---

1. Our perusal of the record indicates that Dan continues to pay $250.00 per week.

2. These approximated figures include depreciation added back into the regular income sum. *See Issues One and Three.*

comes and the support guidelines, was $256.00 weekly. At the conclusion of the first hearing, Debra agreed to accept $250.00 weekly in support payments.

During the hearing, the trial court excluded three of Dan's tendered exhibits. These were Exhibits F, H and I, and related to Dan's finances involved in his farming operation.

At the conclusion of the evidence at the hearing, the court instructed the parties to compute the parties' income as of August 10, 1990, a date to which Dan agreed. The trial court determined that Dan's gross annual income for 1990, as of August 31, 1990, was $75,092.61. When the parties divorced in 1988, Dan's net worth was approximately $98,272.00. At the time of trial, Dan's net worth was calculated to be approximately $227,592.00. The record also shows increases in the value of Dan's land and farm equipment since the divorce in 1988. Dan's debts have increased, but the value of his grain in storage has remained relatively stable.

Dan's present wife voluntarily resigned from her job in August of 1989; this job had garnered approximately $15,000.00 of marital income per year. Now, Dan pays his wife $125.00 per week from his farm income, and indirectly assists his wife in supporting her two children from her previous marriage.

In 1990, Dan farmed more land than he had in 1988 when the dissolution decree was granted, which originally set the amount of child support he pays to Debra. He also achieved his greatest gross receipts in 1990, totalling approximately $296,000.00 as of November 5, 1990. In 1990, Dan purchased a used automobile for $12,000.00. This car is shown for income tax purposes as a farm operating expense. He also spent $1,000.00 on a vacation he and his wife took to Arizona.

Because Dan had requested special findings, at the court's request, both parties submitted proposed findings of fact and conclusions of law. On December 27, 1990,

the trial court ordered Dan to pay child support to Debra in the sum of $258.50 per week, commencing August 10, 1990. Both parties sought attorneys' fees and the trial court awarded them to Debra.

Dan filed a motion to correct error on January 25, 1991, alleging the discovery of new evidence, namely his 1990 federal income tax return. The trial court denied his motion on March 4, 1991. Debra filed a request for post-trial and appellate attorneys' fees on March 26, 1991, which was granted on April 30, 1991.

The appeals of the trial court's ruling on the petition to modify dissolution decree and the ruling awarding attorneys' fees to Debra were consolidated. This appeal ensued. Other relevant facts will be stated in our discussion of the issues.

### DISCUSSION AND DECISION

■ Since the trial court made specific findings of fact and conclusions of law, we are bound to review them under the following standard: we first must determine whether the evidence supports the findings; we then determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215. The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Co. v. R.T.M. Development Co.* (1987), Ind. App., 512 N.E.2d 201, 203. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County,* 530 N.E.2d at 1215.

### *Issue One*

First, Dan contends that the trial court erred in refusing to admit his tendered Exhibits F, H, and I. We disagree.

■ An error in the admission of evidence is not reversible when it does not prejudice the complaining party's rights.

*K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749, 754. Moreover, the admissibility of evidence is within the sound discretion of the trial court. *Eversole v. Consolidated Rail Corp.* (1990), Ind.App., 551 N.E.2d 846, 854. A reversal is warranted only when the trial court has abused its discretion and its action is clearly erroneous and against the facts and circumstances before the trial court and reasonable inferences drawn therefrom. *Id.*

■ Exhibit F is a two-page document containing Dan's estimated cash from operations and notes regarding estimated cash flow. Debra's objection on the ground of speculation was sustained. Upon preliminary questioning by Debra's attorney, Dan's expert witness' testimony indicated that his knowledge of Dan's current crops planted and projected future grain prices was well-reasoned conjecture, at best. We cannot say that the trial court's ruling was unreasonable and because of our deferential standard of review, must affirm this ruling.

■ Exhibit H is Dan's monthly operating statement for his farm operation ending August 31, 1990. The trial court sustained Debra's objection that Exhibit H is a financial statement which Debra requested in discovery and was never produced until trial. Even if we were to agree with Dan that Exhibit H is not a financial statement and thus, was not required to be produced during the discovery process, it was still properly refused. We will not reverse on the basis of error in the exclusion of evidence if the erroneously excluded evidence is ultimately entered into the record. *Green v. Green* (1983), Ind.App., 447 N.E.2d 605, 609. Because Exhibit R contained substantially the same information as excluded Exhibit H, Dan shows no error. Exhibit R, which was entered into the record later in the proceedings, is a month-

ly operating statement ending September 30, 1990. Exhibit H's ending date is August 31, 1990. However, when taking the net farm income before depreciation on the September statement and subtracting the September expenses, also contained in a portion of the September statement, we arrive at an amount very close to the net farm income contained in the August statement.[3] The difference in the two amounts, approximately $350.00, is merely *de minimus*, does not render the two statements substantially different, and does not require a reversal of the court's ruling. *Cf. In re Marriage of Davidson* (1989), Ind. App., 540 N.E.2d 641, 646 (*de minimus* error does not require reversal on appeal). Because any error in relying on amounts listed in Exhibit H was only *de minimus* given the small difference between the figures from Exhibits H and R, any error, if at all, was harmless.

■ Finally, Dan's tendered Exhibit I is a farm records code sheet, prepared by Farm Bureau and not specifically applicable to Dan. Debra's objection to the relevance of the exhibit was sustained, and we may not reverse this ruling absent an abuse of discretion. The codes contained on this exhibit were not connected to Dan through further explanation or documentation. Given the exhibit's marginal relevancy to Dan's yearly income, we see no error. *See Smith v. State* (1984), Ind., 465 N.E.2d 702, 705 (trial court has wide latitude in ruling on evidence's admissibility and relevancy).

*Issue Two*

Next, Dan asserts that the trial court erred in its award to Debra of trial and appellate attorneys' fees. We find that the award of trial fees was proper but reverse the award of appellate fees.

■ The determination of the payment of attorney's fees in proceedings to modify

---

**3.** August 31, 1990 was the date used for valuation in this portion of the hearing. The pertinent calculations from the September statement are:

farm net before depreciation: $56,098.35

| | |
|---|---|
| plus September expenses: | **$19,345.34** |
| TOTAL: | **$75,443.69** |

This compares with the August statement value of: $75,092.61, for a difference of $351.08.

a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. *Tucker v. Tucker* (1980), Ind.App., 406 N.E.2d 321, 324. In determining the award of attorney's fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. *Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554, 557. Additionally, the award of attorney's fees in cases such as this is specifically authorized by IND.CODE § 31-1-11.5-16.[4]

■ The trial court awarded Debra 85% of her trial attorney's fees, or $3,975.50. Record at 59, 63. I.C. § 31-1-11.5-16 gives the trial court wide latitude in making such awards, and we find that this amount was well within the trial court's discretion. *See Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840, 850 (trial court's award of attorney's fees to wife was not against the logic and effects of the facts and circumstances when it considered the parties' resources, their economic condition, their ability to earn income, and other appropriate factors). Dan shows no error in this portion of the fees awarded.

■ However, we find that the award of $10,000 in appellate attorney's fees to Debra was improper. A court may consider the costs of defending an appeal when fashioning its award of attorney's fees in dissolution proceedings. *Holman v. Holman* (1985), Ind.App., 472 N.E.2d 1279, 1288. Furthermore, a trial court may award attorney's fees to a former wife prior to her attorney's performance of legal services when appealing an action in a dissolution proceeding. *Canaday v. Canaday* (1984), Ind.App., 467 N.E.2d 783, 786. However, a trial court's discretion in awarding such fees is not boundless.

■ In this case, Debra's attorneys testified regarding their services and the estimated cost of appeal at a hearing of which Dan was apparently given no notice. The clerk's docket sheet shows that notice of the April 30, 1991 hearing to consider the award of appellate attorney's fees was sent to only Debra's counsel. Record of Proceedings from Consolidated Appeal at 3. After the hearing, of which Dan and his counsel were ostensibly unaware, and thus absent, the order was sent to both Debra's and Dan's attorneys. *Id.* Because the only evidence a court may properly consider when ruling on a request for appellate attorney's fees is evidence from a hearing on the request, *Holman*, 472 N.E.2d at 1289, and Dan had no opportunity to meet Debra's evidence or present his own in opposition, we must reverse and remand for a new hearing on this issue.[5] *Cf. id.*, at 1288-1289 (husband given notice and opportunity to appear and failed to do so, submitting only an affidavit instead). The lack of

---

**4.** This section provides, in relevant part:

"(a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."
I.C. § 31-1-11.5-16.

**5.** We note that two districts of our court disagree regarding whether a trial court retains jurisdiction to entertain a motion for appellate attorney's fees after an appeal is perfected in this court by filing the record of proceedings.

*See Wagner v. Wagner* (1986), Ind.App., 491 N.E.2d 549; *contra Hudson v. Hudson* (1985), Ind.App., 484 N.E.2d 579. In this case, however, although the first praecipe was filed prior to the trial court's ruling on Debra's motion for appellate attorney's fees, the record of the proceedings was not filed until May 30, 1991, well after the ruling awarding appellate fees. Thus, we leave the resolution of this conflict to another day. Regardless of whether the trial court had jurisdiction to award the fees, remand is necessary to conduct a hearing in which Dan may also participate. We disagree, however, with Dan's bare assertion that the award of attorneys' fees was "punitive" in nature. Appellant's Reply Brief at 35. Indeed, we express no opinion on the merits of an award of appellate attorney's fees in this case.

such opportunity and notice to be heard warrants reversal; indeed, Debra has acknowledged that she would agree to a remand for rehearing on this issue. Appellee's Brief at 42–43.

### Issue Three

Dan argues that the trial court erred in using August 10, 1990 as the date for modification of child support. We find that Dan acquiesced in this date's use and even if he had not, he shows no error.

 Throughout the proceedings after Dan filed his amended petition to modify child support, he agreed that August 10, 1990 was to be the effective date of modification. Record at 179, 213, 254. While it is true that Jason began to live with Dan in the spring of 1990, Dan's first petition, filed in the spring of 1990, was dismissed since he failed to appear. Record at 5. A trial court has discretion to make a modification relate back to the date a petition to modify is filed. *Kruse v. Kruse* (1984), Ind.App., 464 N.E.2d 934, 939. Furthermore, a trial court also has the discretion to make the modification effective as of any ensuing date after the petition to modify is filed. *Smith v. Mobley* (1990), Ind.App., 561 N.E.2d 504, 508. The trial court's choice of an effective date of a support modification order is reviewed only for an abuse of discretion. *Holman*, 472 N.E.2d at 1287. Thus, the trial court judge was acting well within his discretion in determining that any modification of support would take effect as of August 10, 1990, and additionally, Dan acquiesced to this date's use throughout the hearings. Public policy also dictates this result. *Cf. id.* at 939 (to grant modification of support only from the date of the court's order would detract from the purposes of the changed circumstances rule and would only encourage and benefit dilatory tactics).

### Issue Four

Finally, Dan claims that that court failed to follow the Guidelines and consider the factors relevant to child support modification under I.C. § 31–1–11.5–17, and thus, did not award Debra the proper amount of child support. We disagree.

Child support awards may be modified only:

"(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed."

I.C. § 31–1–11.5–17(a)(1) and (2). Additionally, Ind. Child Support Guideline 4 provides that "[T]he provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances." Dan's petition to modify child support alleges that changed circumstances have occurred under I.C. § 31–1–11.5–17(a)(1) and Child Supp. G. 4. Record at 12–14. The trial court's relevant findings state:

"Regarding support, James contends his child support obligation, based upon the State's approved Court approved guidelines should be Nineteen Dollars and Eighty-five Cents ($19.85). Debra Jo contends child support, based upon the State Supreme Court approved guidelines should be Two Hundred and Fifty-eight Dollars and Fifty Cents ($258.50) considering the evidence presented at trial. The two child support contentions of Debra and James are the greatest variance ever seen by this Court. . . .

[James's] first goal must be to support his children.

The law requires that any change in circumstances be so *substantial and continuing* to make the previous terms unreasonable. Drought, market varia-

tions, asset acquisition and disposal, and the normal perils of the farming industry alone are not events that make a change so substantial and continuing that a mere child support order is unreasonable. They are risks of doing business in a highly competitive market. James' gross income is a reflection that his efforts have steadily increased and his potential is enormous. This is not a case where a child support obligor has been laid off, dismissed, or contracted a serious disease and is unable to support his children. Clearly those events would be changes so substantial and continuing that would warrant a change in child support.

James has failed in his burden of proof against the economic background of the farming business...." (emphasis in original)

Record at 60–63.

■■■ Child support orders are modifiable. *McCallister v. McCallister* (1986), Ind.App., 488 N.E.2d 1147, 1150. The court of appeals will reverse decisions of the trial court modifying a support order only for an abuse of discretion from a view of the evidence most favorable to the trial court's determination. *Billings v. Billings* (1990), Ind.App., 560 N.E.2d 553, 554. When confronted with a petition to modify a support order, the trial court must consider the totality of the circumstances involved in order to ascertain whether a modification is warranted. *Id.* at 555. The financial resources of both custodial and noncustodial parents are relevant in child support modification determinations and should be included in the totality of the circumstances to be considered when an award is made. *Id.*

■■■ We find that the trial court's determinations and findings were proper based on the evidence adduced at the hearings. Although the trial court rejected James's contention that his alleged reduction in income was a substantial change in circumstances warranting a reduction in his child support payments, the court did see Jason's change in residence and Dan's receipt of custody of Jason as a change in circumstances, and reduced James's child support obligation on that basis. *See Rice v. Rice* (1984), Ind.App., 460 N.E.2d 1228, 1230 (change in custody from one parent to another is, in itself, a substantial change of circumstances which justifies a modification of child support). Support awards determined under the Guidelines are presumptively correct. *Grammer v. Grammer* (1991), Ind.App., 566 N.E.2d 1080, 1082. A parent who seeks a deviation from the Guidelines' amount must present evidence rebutting the presumptive amount as unjust or inappropriate under the circumstances. *Id.* We cannot say that the trial court erred in its determinations, and will not reweigh the evidence or judge the witness' credibility. *See Rice*, 460 N.E.2d at 1230.

■ Moreover, we have already held that the trial court's computation of the amount of James's income is borne out by the exhibits admitted into evidence. *See Issue One*, especially note 3 (any difference in amounts calculated from admitted exhibits and trial court's findings was *de minimus*). Not considering Dan's 1989 greatly reduced income as a result of the 1988 drought was allowable since the drought posed an unusual circumstance in the computation of Dan's yearly income. *See* Record at 167–169. Under our deferential standard of review, we cannot say the trial court's award of $258.50 child support per week, computed in accordance with the Guidelines, is clearly against the logic and effect of the facts and circumstances before the trial court. *See Griswold v. Savage* (1991), Ind.App., 569 N.E.2d 970, 972; *cf. Barnes v. Barnes* (1990), Ind.App., 549 N.E.2d 61 (husband's economic situation's deterioration, coupled with daughter's serious illness constituted change in circumstances requiring mother, who was millionaire, to pay half of medical costs). Dan cites numerous cases in support of his contentions. We find them distinguishable. *See Matter of Paternity of Buehler* (1991),

Ind.App., 576 N.E.2d 1354 (error to classify father as underemployed for purposes of child support computation where father earned same amount throughout marriage as at trial).[6] The trial court stated that it relied on Dan's potential income; however, even if such reliance were in error, which we do not find, Dan's actual income supports the trial court's determination. We remind Dan that it was he who petitioned the trial court for a modification of the original child support order. Thus, his argument that Debra somehow carries the burden of proof to rebut the presumptive amount of support under the Guidelines is misplaced. Given our determination that the trial court correctly computed Dan's income and resulting support obligation according to the Guidelines, any burden to rebut such determinations rests on Dan as the party opposing the presumptive Guideline amount.

Dan also claims that the trial court erred in denying his motion to correct error, alleging that his 1990 federal income tax return was newly discovered evidence, under Ind.Trial Rule 59(A)(1). We disagree.

 To justify a new trial because of newly discovered evidence, the moving party must show that the evidence is not merely cumulative, was not available at the time of trial, was not known to the movant at the time of trial, and could not have been discovered with reasonable diligence. *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231, 237. In addition, the newly discovered evidence must be such as to raise a strong presumption that, in all probability, it will bring about the opposite result in another trial. *Id.* Granting or denying a motion to correct error based upon newly discovered evidence is a matter within the trial court's discretion; we will reverse only if it can reasonably be determined that on retrial a different result would be probable. *Watkins v. State* (1988), Ind., 528 N.E.2d 456, 460.

 The trial court's denial of Dan's motion to correct error is thus given great deference. We agree with Debra that had Dan desired to submit his 1990 federal income tax return into evidence in computing his child support obligation, he could have asked for a continuance at the November 7, 1990 hearing. Instead, he chose to wait until the trial court had ruled on his petition and then file a motion to correct error. We cannot condone this use of T.R. 59. *See Cook v. Equitable Life Assurance Society of the United States* (1982), Ind. App., 428 N.E.2d 110 (equity aids the vigilant, not those who slumber on their rights). Furthermore, we cannot say that had the trial court considered Dan's alleged newly discovered evidence, a different result would have occurred. *See Watkins*, 528 N.E.2d 456 (affidavits presented as newly discovered evidence were merely cumulative of evidence at trial and self-serving). Dan shows no error.

Affirmed in part, reversed in part, and remanded for a hearing on the issue of appellate attorney's fees.

Costs assessed seventy-five percent (75%) to appellant and twenty-five percent (25%) to appellee.

ROBERTSON and SHIELDS, JJ., concur.

---

6. Dan also cites decisions from other jurisdictions. Because our legislature and courts have provided binding precedent which forms the basis for our decision, we need not peruse other jurisdictions' treatment of these issues. Thus, we reject Dan's law development argument. *See* Appellant's Brief at 30.