In re the Marriage of Ronald Allen **SMITH, Appellant–Respondent,**

v.

**Julie Ann SMITH, Appellee–Petitioner.**

No. 71A03–0212–CV–416.

Court of Appeals of Indiana.

Aug. 15, 2003.

Aric J. Rutkowski, The Blanford Law Office, South Bend, IN, Attorney for Appellant.

Mark S. Lenyo, South Bend, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Ronald Allen Smith appeals the trial court's order that he was in arrears on his child support obligation in the amount of $20,302.00 pursuant to a dissolution decree where the appellee-petitioner Julie Smith was granted custody of the parties' two minor children and Ronald was ordered to pay $76.00 per week in child support. Concluding that the trial court abused its discretion in ordering Ronald to reimburse Julie for all past due support because a de facto split custody arrangement existed between the parties and that it was erroneously determined that Ronald should not receive any credit toward an arrearage for the period of time that he had one of their unemancipated children in his custody, we reverse and remand.

### FACTS

The parties were married in 1976, and two daughters were born of the marriage. Heather was born on October 17, 1978, and Melissa was born June 16, 1980. In January 1996, Julie and Ronald entered into a settlement agreement which was "approved in open court and incorporated into the final decree" of dissolution. Appellant's App. p. 15. Pursuant to the agreement, Julie was given physical custody of the children, and Ronald was to "pay the sum of $76.00 per week" in gross for "support and maintenance of the two (2) minor children." Appellant's App. p. 12. The trial court ordered the parties "to comply with the terms of" their "approved and incorporated" agreement. Appellant's App. p. 7. The agreement also provided, "No modification or waiver of any of the terms or conditions of this agreement shall

be effective unless executed in writing ... and duly filed with and approved by the court, or by further order of the court." Appellant's App. p. 15.

Almost immediately after the dissolution, Heather began living with Ronald in Florida and continued to live with him until the summer of 1998. During that time, Melissa continued to live with Julie and Ronald paid no support because he and Julie agreed that each parent would provide the support for the child in their care. In the summer of 1998, Heather moved back in with Julie and shortly thereafter, Melissa moved in with Ronald with whom she resided until she reached majority in June 2001. Again, Ronald paid no support in light of the agreement he made with Julie.

It is undisputed that neither party sought to modify the court's order with respect to custody or support. However, in April 2002, the State filed a petition seeking "to determine the amount of arrears owing" by Ronald to Julie and for the court to order his payment of such arrears. Appellant's App. p. 17.

On June 18, 2002, the trial court heard argument by counsel and testimony from Ronald and Julie as to where their daughters had resided through the years. Ronald argued that he should receive a credit against any support arrearage because he always had one of the two daughters living with him and Heather was emancipated in 1999. Following the hearing, the trial court observed that the parties were "in a pickle of their own creation." Appellant's App. p. 18. It then issued an order citing the absence of case law allowing for such a credit where there is a "support order for multiple children" that is "in gross"; and noting that if the imputed income shown for Ronald on the child support worksheet

filed with the decree were used to calculate support for split custody, Julie would have had to pay an $8 weekly child support obligation to Ronald. Appellant's App. p. 19. The trial court directed the parties to submit further authority and argument.

Thereafter, the trial court reviewed the parties' submissions and concluded "that under the specific facts of this case, to-wit, an in gross order of support with a de facto split custodial arrangement not sanctioned by Court order, the Court has no authority under the existing case law to award credit for non-conforming payments." Appellant's App. p. 4.[1] Its order also noted that the parties had "created this problem," which could have been avoided by seeking a modification of the court order. Appellant's App. p. 5. The trial court then concluded that "under the facts of this case," any credit against the arrearage would be "as much arbitrary as equitable" and found the arrearage to be the full amount as originally ordered from the date of the dissolution decree until the date that Melissa attained the age of 21. Appellant's App. p. 5. Ronald now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Decisions regarding child support generally rest within the sound discretion of the trial court. *Painter v. Painter*, 773 N.E.2d 281, 282 (Ind.Ct.App. 2002). We reverse such a determination only if there has been an abuse of discretion or the trial court's determination is contrary to law. *Id.* By the same token, the purpose of child support is the welfare of the child and not the punishment of the father. *Rohn v. Thuma*, 408 N.E.2d 578, 582 (Ind.Ct.App.1980). In some circum-

---

1. We remind Ronald that the appellate rules require the appellant's brief to include the order being appealed. *See* Ind. Appellate Rule 46(A)(10).

stances, a credit may be granted to the noncustodial parent in the event of nonconforming support payments. *DeMichieli v. DeMichieli*, 585 N.E.2d 297, 302 (Ind.Ct. App.1992). More specifically, the trial court may afford relief from an unmodified support order if the noncustodial parent has, by agreement with the custodial parent, assumed custody and has provided food, clothing, shelter, medical attention, and school expenses and has exercised parental control for an extended period. *Isler v. Isler*, 425 N.E.2d 667, 670 (Ind.Ct. App.1981).

## II. Ronald's Contentions

■ Ronald contends that the trial court erred in holding him liable for the full amount of unpaid child support. Specifically, Ronald asserts that he should not be ordered to pay any support arrearage because he had primary custody of one of the children at all relevant times during the children's minority in accordance with the agreement he reached with Julie.

■ As noted above, circumstances do exist where a credit may be granted to the noncustodial parent in the event of nonconforming support payments. In *DeMichieli*, we observed that a credit will attach:

> Where the obligated parent by agreement has taken the children in his or her home, assumed custody of them, provided them with necessities, and has exercised parental control over their activities for such an extended period of time that a permanent change of custody has in effect occurred.

*DeMichieli*, 585 N.E.2d at 302. This court has also determined that the conduct of the parties may create an agreement by implication with respect to a custodial arrangement in the absence of a written contract. The law creates the benefits and obligations of contract in order to promote justice and equity. *Timothy F. Kelly &*

*Assocs. v. Ill. Farmers Ins. Co.*, 640 N.E.2d 82 (Ind.Ct.App.1994). As this court observed in *Retter v. Retter*, 110 Ind.App. 659, 663–64, 40 N.E.2d 385, 386 (1942):

> An implied contract, that is, one wherein an agreement is arrived at by the acts and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction.

Turning to the circumstances here, it is apparent that while Ronald and Julie did not enter into an express written contract concerning the custodial arrangement, their conduct gave rise to an agreement by implication. The undisputed evidence shows that Ronald exercised primary custody over one of his daughters at all relevant times during the child's minority. Both parties agreed to that arrangement and Julie did not raise a voice in protest until April 2002—more than six years after Heather began living with Ronald. Thus, while neither Julie nor Ronald took steps to modify the settlement agreement in the trial court, it is apparent that a true split custody arrangement was effectuated and continued to exist.

Given the similarities of the parties' incomes in this case, it made sense to both Julie and Ronald that they each would provide financially for the child in their care. Thus, it is certainly reasonable under these circumstances to conclude that neither party petitioned the court to modify the settlement agreement because doing so would be unnecessary. To that end, Ronald and Julie were able to communicate and cooperate with each other in deciding what was best for their children and what method of support was required.

It is also without dispute that when Ronald took the children on separate occasions, he assumed custody of them, provided for their necessities of life and exercised parental control over their activities. Considering the extended period of time that Ronald performed in that fashion, it is apparent that a permanent change of custody occurred. Both parents were providing for their daughters in a manner that was acceptable to both of them, and it is obvious that they believed this arrangement to be in the children's best interests.

It was not until both children were emancipated by virtue of their twenty-first birthdays, and after more than six years of this de facto split custody arrangement, did Julie return to court and allege that Ronald failed to support his children and fell into arrears with respect to that obligation. In essence, Julie permitted Ronald to accumulate thousands of dollars in support arrearage, while at the same time he faithfully provided large sums of money for the girls' food, shelter, medical and other financial needs while they were in his custody. Had Julie protested the arrangement at an earlier time, Ronald could have sought a modification of the settlement agreement and requested an appropriate credit with respect to his support obligation.

In construing the trial court's order regarding the arrearage, it is apparent that Ronald is, in reality, paying child support twice—once for the support he has already expended throughout the years for the care of Heather and Melissa, who were in his care, custody and control for different periods of time throughout the girls' unemancipated years, and again for the arrearage that the trial court determined was owed because neither party returned to court to modify the original terms of the settlement decree. The trial court recognized a similar anomaly in its June 20, 2002 order which provided that a calculation utilizing a split custodial arrangement would result in Julie actually owing Ronald "back support." Appellant's App. p. 20–21.

So, were we to uphold the trial court's decision, Ronald would be unjustly penalized and Julie unjustly enriched, for failing to return to court to memorialize an agreement that the parties themselves had determined to be best for their children. Such prejudicial and unscrupulous "gotcha" litigation tactics should not be tolerated. *See Wilson Fertilizer & Grain, Inc. v. ADM Mill. Co.*, 654 N.E.2d 848, 856 (Ind. Ct.App.1995) (Kirsch, J., concurring and dissenting) (disagreeing with the majority's application of the law to the facts enabling appellee-defendant to play and win "the latest version of 'Legal Gotcha' " and receive goods that it had ordered without paying for them); *Salcedo v. Asociacion Cubana*, 368 So.2d 1337, 1339 (Fla. Dist.Ct.App.1979) (condemning "gotcha" litigation tactics); *Thomas v. City of Miami Beach*, 753 So.2d 591, 591 (Fla.Dist.Ct. App.2000) (disapproving of "gotcha" administrative practices); *see also In re Marriage of Tearman*, 617 N.E.2d at 977 (observing that the purpose of permitting a credit against the non-custodial parent's basic support obligation for educational support costs is to avoid double payment of the same expense resulting in a windfall for the custodial parent).

In light of these circumstances, we conclude that the trial court's judgment may not stand. Thus, we reverse and remand for further proceedings so that the trial court might determine whether or not to grant a degree of relief from the full amount of the arrearage as computed and, if so, the amount of the adjustment to the arrearage in order to avoid a severe injustice.

Reversed and remanded.

SULLIVAN, J., concurs with opinion.

DARDEN, J., dissents with opinion.

SULLIVAN, Judge, concurring.

In the case before us, the trial court clearly indicated that it thought it had no discretion in the matter. The court was of the view that, absent a formal modification of the in gross support order, credit could not be given Father for having actual custody of one or the other of the children at various times. The expressions of the court also clearly indicated that if such discretion existed, some relief might well be afforded Father.

In my view, the unique circumstances of this case give rise to justification for some relief to Father from an award of the total amount of the support as calculated under the 1996 decree. The case falls within the contemplation of the line of cases cited in the lead opinion and which afford a narrow exception to the general rule.

As noted in *Isler v. Isler*, 425 N.E.2d 667 (Ind.Ct.App.1981), the trial court may in its discretion afford relief from an unmodified support order if the non-custodial parent has by agreement with the custodial parent, assumed custody and has provided food, clothing, shelter, medical attention, and school expenses and has exercised parental control for an extended period. In this regard I find *Ogle v. Ogle* 769 N.E.2d 644 (Ind.Ct.App.2002) clearly distinguishable.

Although the parties did not enter into an express written contract concerning the custodial arrangement, the conduct of the parties created an agreement by implication. The law creates the benefits and obligations of contract in order to promote justice and equity. *Timothy F. Kelly & Assocs. v. Illinois Farmers Ins. Co.*, 640 N.E.2d 82 (Ind.Ct.App.1994).

As stated in *Retter v. Retter*, 110 Ind. App. 659, 40 N.E.2d 385 (1942):

"An implied contract, that is, one wherein an agreement is arrived at by the acts and conduct of the parties, is equally as binding as an express contract, wherein the agreement is arrived at by their words, spoken or written. In either case it grows out of the intention of the parties to the transaction." 110 Ind. App. at 663–64, 40 N.E.2d at 386.

Father and Mother clearly evidenced their intention by their conduct and by the fact that Father undertook custody and financial responsibility for one or the other of the two children during the period from 1996 to 2001, when the eldest child reached her majority.

I concur in the reversal and remand for further proceedings in order to permit the trial court to exercise discretion and to determine whether or not to grant a degree of relief from the full amount of the arrearage as computed and, if so, the amount of the adjustment to the arrearage.

DARDEN, Judge, dissenting.

I must respectfully dissent, finding no authority for the course of action the majority directs.

Most recently in *Ogle v. Ogle*, 769 N.E.2d 644, 648 (Ind.Ct.App.2002), *trans. denied*, we reiterated the "long-standing rule that the non-custodial parent may not unilaterally reduce a child support obligation but must make payments in the manner, amount, and at the times required by an in gross support order until a court orders a modification or all of the children are emancipated or reach the age of twenty-one years." Where the party who was ordered to make child support payments has never petitioned the court to modify or terminate the child support order, the trial court is "without authority to retroactively

reduce or terminate" that parent's child support obligation. *In re Marriage of Loeb,* 614 N.E.2d 954, 958 (Ind.Ct.App. 1993); *see also Ogle,* 769 N.E.2d at 648 (citing IND.CODE § 31–16–16–6, and *Beehler v. Beehler,* 693 N.E.2d 638, 640 (Ind.Ct. App.1998)).

The majority remands for the trial court to determine whether to grant "relief" to Ronald from the full amount of his child support arrearage and, if so, "the amount of the adjustment to the arrearage." Op. at 286, 287. How would the trial court determine this? Would it base Ronald's court-ordered child support obligation solely upon what is undisputably his *imputed* weekly income in December of 1995? Would it assume Ronald's income had been at that level during the intervening years, ignoring argument to the trial court that his weekly income was imputed at $300 after Ronald "quit his job at AM General where he was making $45,000 a year" because he "just wanted to take off"? (Tr. 4, 5). Also, the dissolution order directed Ronald to "maintain major medical insurance on the two (2) minor children" through his employment or "share equally" with Julie the expense to "maintain private health insurance" for them. (App. 12). Would the trial court consider the argument of Julie's counsel that Ronald "never maintained health insurance as he was required to do"? (Tr. 6). In other words, for the trial court to now determine what would have been an appropriate level of child support under the circumstances, does the majority envision a *de novo* and full evidentiary review of the facts from the time of their divorce in 1996 to the time of Melissa's emancipation in 2001?

Based upon the black-letter prohibition of retroactively modifying child support and the common law of in gross child support orders, I would respectfully disagree with the majority's order that the

trial court must somehow revisit the parties' obligations during the period Ronald failed to comply with its order to pay child support. Based upon the facts and circumstances in this case, I agree with the trial court's observation that the parties had "created this problem," that any credit given to Father's arrearage would be "as much arbitrary as equitable," and that this could have been avoided by seeking a modification of the court's order. In essence, I do not find that the trial court abused its discretion, nor was its decision contrary to law.