**Timothy Scott DECKER, Appellant–Petitioner,**

v.

**Jean K. DECKER, Appellee–Respondent.**

No. 82A01–0412–CV–519.

Court of Appeals of Indiana.

June 9, 2005.

Laurie Baiden Bumb, Keating, Bumb, Vowels & Laplante, Evansville, for Appellant.

Jeff Shoulders, Barber, Shoulders & Siesky, LLP, Evansville, for Appellee.

## OPINION

RILEY, J.

### STATEMENT OF THE CASE

Appellant–Petitioner, Timothy Decker (Father), appeals the trial court's order in favor of the Appellee–Respondent, Jean Decker (Mother), finding that he was in arrears on his child support obligation in the amount of $43,105.00.

We affirm and remand.

### ISSUES

Father raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in determining that he was not entitled to credit for nonconforming child support payments; and

(2) Whether the trial court erred in its calculation of Father's child support arrearage.

### FACTS AND PROCEDURAL HISTORY

Mother and Father were divorced on June 29, 1988. Pursuant to the terms of the decree of dissolution (the Decree), Mother was granted custody of their son, M.D., who was born on December 9, 1986. The Decree provided that Father would pay child support in the amount of $40.00 per week to the Clerk of the Vanderburgh Superior Court (the clerk). On May 23, 1991, Mother filed a petition to modify

child support obligation. The trial court granted Mother's petition and ordered Father to pay child support in the amount of $55.00 per week beginning on May 24, 1991, and then to pay $65.00 per week beginning on November 29, 1991. Father made several payments from July 1, 1988, until October 21, 1992. Father made no payments after October 21, 1992.

Initially following the divorce, Father testified that he and Mother verbally agreed that he would provide child care for M.D. while Mother was at work and, therefore, would not be required to pay child support. On October 21, 1995, Father and Mother executed a written agreement providing:

> I, [Mother], have agreed that [Father] will and has been taking care of our child [M.D.] while I work or have other engagements. Childcare for [M.D.] is an expense I no longer pay since [Father] takes care of [M.D.], our son. Child support payments are not required by [Father] at this time unless I, [Mother] deem it necessary to seek other alternatives.

(Appellant's App. p. 36). However, Mother testified that she did not sign this agreement. Subsequently, on June 15, 1999, Mother prepared the following handwritten note: "I, [Mother], can tell you that [Father] does help take care of [M.D.] and is up-to-date on all of [M.D.'s] current needs." (Appellant's App. p. 38). This document was prepared by Mother at Father's request for litigation arising from Father's subsequent marriage. Father testified that he provided child care for M.D. from the time of the divorce until M.D. started driving. Stephanie Riddell, Father's sister, testified that she frequently assisted in caring for M.D.

On April 14, 2004, Father filed his Petition to Determine Child Support Arrearage. Thereafter, on June 24, 2004, Mother filed her Verified Information for Indirect Contempt for Non Payment of Support. The trial court held a hearing on September 13, 2004. After taking the matter under advisement, the trial court found the following:

> ... that the agreement submitted by [ ] Father even if valid does not rise to the level of an exception to the general rule that an obligated parent will not be allowed credit for non-conforming child support payments. Father is found to be in contempt and in arrears of $43,105.00 as of 8/5/04 ....

(Appellant's App. p. 1).

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Nonconforming Child Support Payments

Father first contends that the trial court erred in holding him liable for the full amount of unpaid child support. Specifically, Father asserts that he should not be ordered to pay any support arrearage because he provided child care for M.D. in accordance with the agreement he reached with Mother. We disagree.

Decisions regarding child support generally rest within the sound discretion of the trial court. *Smith v. Smith*, 793 N.E.2d 282, 284 (Ind.Ct.App.2003). We reverse such a determination only if there has been an abuse of discretion or the trial court's determination is contrary to law. *Id.* By the same token, the purpose of child support is the welfare of the child and not the punishment of the father. *Id.* Further, an obligated parent will not generally be allowed credit for payments not conforming to the support order. *Kaplon v. Harris*, 567 N.E.2d 1130, 1133 (Ind.1991). However, Indiana courts have

recognized narrow exceptions to this rule for (1) payments made directly to the mother, (2) payments made via an alternative method agreed to by the parties and substantially complying with the existing decree, (3) payments covered when the non-custodial parent takes custody of the children with the other parent's consent, and (4) payments made toward the funeral expenses of a child. *Id.*

In this case, Father argues that his care of M.D., while Mother was at work, was an alternative method of payment agreed to between himself and Mother. To support his contention, Father relies on *Payson v. Payson,* 442 N.E.2d 1123 (Ind.Ct.App. 1982). In *Payson,* the father was ordered to make child support payments directly to the clerk of the court. *Id.* at 1125. Instead of making payments to the clerk of the court, the mother agreed that the father could make direct payments to the mother and to third parties for rent. *Id.* We affirmed the trial court, holding that "[i]n a situation where, as here, the parties have agreed to and carried out an alternate method of payment which substantially complies with the spirit of the original support decree, we find it would be unfair to refuse to credit the non-custodial parent simply because the payments were not made through the clerk." *Id.* at 1129.

However, Father's reliance on *Payson* is misplaced. In *Payson,* the father provided cancelled checks to evidence payments he made directly to mother. *Id.* at 1125. Here, Father never made one payment to Mother from October 21, 1992, until the commencement of this case in the trial court. Moreover, Father fails to provide any evidence as to the frequency with which he provided child care, or how much money Father saved Mother by providing child care.

Our review of the record reveals that beginning on July 1, 1988, Father was to pay varying sums of money to the clerk every Friday. After complying with the Decree for four years, Father testified that he did not make any child support payments after October 21, 1992, because he and Mother agreed that he would provide child care for M.D. in lieu of any monetary payment. Nevertheless, even if Father did provide care for M.D., such a service does not substantially comply with the Decree requiring Father to pay weekly installments of money to the clerk. Accordingly, the trial court did not abuse its discretion in determining that Father was not entitled to credit for nonconforming child support payments. *Smith,* 793 N.E.2d at 284.

II. *Amount of Child Support Arrearage*

Next, Father asserts that the trial court erred in its calculation of his child support arrearage. Specifically, Father maintains that if he owes child support, the amount should be $40,840.00, not $43,105.00. Because Mother agrees that the amount of child support owed by Father is $40,840.000, we remand to the trial court to correct Father's child support arrearage.

### CONCLUSION

Based on the foregoing, we conclude that Father is not entitled to credit for nonconforming child support payments. Additionally, we remand this case to the trial court to enter $40,840.00 as the correct amount of child support arrearage owed by Father.

Affirmed and remanded with instructions.

NAJAM, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the affirmance of the trial court's denial of Father's request for credit for non-conforming child support payments. However, I do not agree with an implication of the conclusion made by the majority.

I would note that the majority rejects Father's claim, in part, because the provision of child care "does not substantially comply with the Decree requiring Father to pay weekly installments of money to the clerk." Opinion at 80. This conclusion strongly implies that "substantial compliance" may be effected only by payments of money to someone providing goods or services. It also does not acknowledge that in *Payson v. Payson*, cited by the majority, the court stated that credit might, in equity, be given for substantial compliance "with the *spirit* of the original support decree." 442 N.E.2d at 1129 (emphasis supplied). The spirit of an order to pay support through the Clerk of Court may be met by "money or its equivalent" and might include the provision of services or tangible goods such as groceries. *See Manners v. State*, 210 Ind. 648, 5 N.E.2d 300 (Ind.1936). If Father had here produced evidence of the frequency and value of the child care provided, a different result might well be reached in this case. Father did not submit such evidence, however. For this reason I concur.