**In re the Marriage of Diana L. ELKINS, Appellant–Petitioner,**

v.

**Daniel L. ELKINS, Appellee–Respondent.**

**No. 09A05–0103–CV–126.**

Court of Appeals of Indiana.

Feb. 25, 2002.

Michael A. Wilkins, Ice Miller, Indianapolis, IN, Attorney for Appellant.

Kelly Leeman, Leeman & Burns, Logansport, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Diana Elkins appeals from certain aspects of the dissolution decree that dissolved her marriage to Daniel Elkins. Specifically, Diana presents the following issues for review:

1. Did the trial court abuse its discretion in including Diana's early retirement benefit as a divisible marital asset?

2. Did the trial court abuse its discretion by including in the marital estate a child support arrearage owed to Diana by her children's father?

We affirm.

The facts favorable to the judgment are that Diana and Daniel were married in 1986. Each had been married previously to someone else. Each had children with their former spouses, but no children were born to Diana and Daniel's marriage. Because Diana's pension and child support

arrearage owed to her by a former husband are the only disputed issues, we will focus upon only those facts that are germane to the aforementioned issues.

Diana began working for General Motors (GM) in August of 1968. She was working for Delco under the same pension plan as its predecessor GM when she filed the instant petition for dissolution on March 29, 1999. On that date, Diana was eligible for a monthly pension of $1,165.73. Subsequent to the date of filing, but before the final hearing, Diana opted to take early retirement at a monthly benefit of $2,300. Daniel also worked at Delco but had approximately ten years less seniority and therefore was not eligible to receive a pension until he was sixty-five years old. When the decree of dissolution was entered, Diana was fifty-four years old and Daniel was fifty-nine.

Before Diana and Daniel were married, Diana was married to Bobby Smith. When Smith and Diana divorced, Smith was ordered to pay child support. He apparently failed to do so on a regular basis. On December 11, 1995, Diana obtained a judgment against Smith for $9,400 in unpaid child support. After obtaining the judgment, Diana delayed collecting from Smith after she proposed that he should pay her from the proceeds of a personal injury lawsuit he had filed. Under the terms of the proposal, Smith would pay Diana $18,143 from the proceeds of the settlement for the original unpaid support, plus support to which she would be entitled in the future. Diana never received any of those funds during the marriage, although she did receive additional child support payments after obtaining the money judgment and before the marriage was dissolved.

### 1.

Diana contends that the trial court erred in including her entire pension as divisible marital property. This court recently set forth the appropriate standard of review in cases where, as here, the trial court enters findings and conclusion in support of a dissolution decree. That standard of review is as follows:

On appeal, we will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. The judgment is clearly erroneous if the findings do not support the conclusions of law or the conclusions of law do not support the judgment.

The disposition of marital assets is within the sound discretion of the trial court. "When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *In re Marriage of Bartley,* 712 N.E.2d 537, 542 (Ind.Ct. App.1999). In reviewing a trial court's disposition of the marital assets, we focus on " 'what the court did, not what it could have done.' " [*Chase v. Chase,* 690 N.E.2d 753, 756 (Ind.Ct.App.1998) (quoting *Fiste v. Fiste,* 627 N.E.2d 1368, 1372 (Ind.Ct.App.1994), disapproved of on other grounds by *Moyars v. Moyars,* 717 N.E.2d 976 (Ind.Ct.App.1999), *trans. denied* ) ].

Therefore, when we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, with-

out reweighing the evidence or assessing the credibility of witnesses. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute.

Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.

*Bizik v. Bizik,* 753 N.E.2d 762, 766 (Ind. Ct.App.2001), *trans. denied.*

■ Pursuant to Ind.Code Ann. § 31–9–2–98(b)(2) (West 1998), a vested pension is included as part of the marital pot and subject to division. Diana does not contend that the pension was entirely unvested and therefore not includable as marital property. Rather, she contends that only a portion of the pension was vested at the time she filed her petition, and that only *that* portion should have been included as marital property subject to division.

The relevant facts are that, when she filed for dissolution, Diana was three months short of thirty years of service for her employer. Had she terminated employment at that time, her monthly pension, when she became eligible to draw it, would have been $1,165.73. With the attainment of thirty years service three months later, the value of her pension almost doubled, to $2,300. She claims that the trial court erred in including the increase in her pension as marital property.

Ind.Code Ann. § 31–15–7–4(a)(1)(3) (West 1998) empowers courts to dispose of the following three classifications of property of the parties: Property owned by either spouse prior to the marriage; property acquired by either spouse in his or her own right after the marriage and prior to final separation; and property acquired by the joint efforts of the parties. The "prior to final separation" demarcation applies only to property acquired by either spouse "in his or her own right." Thus a trial court could distribute property acquired after the filing of the petition for dissolution if acquired "by their joint efforts."

In *In re Marriage of Adams,* 535 N.E.2d 124 (Ind.1989), our supreme court held that police pension rights were subject to disposition as marital property, notwithstanding that the pension rights vested after the dissolution petition was filed but before the dissolution decree was entered. In so holding, the court noted that the pension rights in that case were accumulated in large part through the joint efforts of both spouses, in that the parties were married while the pensioner accumulated his pension eligibility. This, in turn, supported the conclusion that the pension rights "were acquired by the joint efforts of the parties and therefore not subject to the 'prior to final separation' limitation." *Id.* at 127. This court has recognized that *Adams* "alters the long-established rule that the marital pot closes upon the filing of the dissolution petition." *Skirvin v. Skirvin,* 560 N.E.2d 1263, 1265 (Ind.Ct. App.1990), *trans. denied.* Moreover, this holding is consistent with the well-established rule that, "[f]or purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing." *Trackwell v. Trackwell,* 740 N.E.2d 582, 584 (Ind.Ct.App.2000), *trans. dismissed.* Finally, we note that the trial court awarded Diana's pension entirely to

Diana.[1] The trial court did not abuse its discretion in including the entire post-separation value of Diana's pension as a divisible marital asset.

### 2.

■ Diana contends that the trial court abused its discretion by including as a divisible marital asset support arrearage owed to her by the father of her children. Neither party directs our attention to an Indiana case holding one way or the other on the question of whether child support arrearage is includable as a divisible marital asset. A recent decision by the Indiana Supreme Court on a different but related issue leads us to conclude that it is not.

In *In re Hambright,* 762 N.E.2d 98 (Ind. 2002) our supreme court confronted the question of whether child support arrearages owed to a custodial parent are assets of that parent's bankruptcy estate. In that case, a mother had instituted paternity proceedings as a result of which the father was ordered to pay child support. The father fell behind in support and accumulated an arrearage. In 1994, Hambright assigned her rights to collect child support to the State. Hambright filed chapter 7 bankruptcy in 1999. The trustee charged with administering the bankruptcy estate sought to collect on the past due child support. The trial court denied the intervener's motion, the court of appeals reversed, and the supreme court granted transfer.

In analyzing the nature of a parent's interest in support arrearages, the court observed,

> It has long been held that "the right to support lies exclusively with the child,

and that a parent holds the child support payments in trust for the child's benefit." The custodial parent acts as a trustee of the payments and is to use them for the benefit of the child.

*In re Hambright,* 762 N.E.2d at 101 (quoting *Bussert v. Bussert,* 677 N.E.2d 68, 71 (Ind.Ct.App.1997), *trans. denied* ). The central principle upon which the holding was based was that, "[a]s a matter of law, arrearages, like current and future support, are held for the children, and the custodial parent has no individual property interest in them." *In re Hambright,* 762 N.E.2d at 103.

IC § 31–15–7–4 (West 1998) provides that in a dissolution action, the court shall divide the property of the parties that was owned by either spouse individually before the marriage, acquired by the parties' joint efforts, or acquired by either spouse after the marriage and before the parties' final separation. The kinds of property subject to division, as set out in the statute, all share a common characteristic: they are owned by the parties, either jointly or separately. *In re Hambright* clarifies a principle previously established in a different context under Indiana law, i.e., that support arrearages are not owned by the parent, but instead are held by the parent in trust for the child. Consistent with this reasoning, we conclude that support arrearages are not includable as marital property subject to division in a dissolution proceeding.[2] Accordingly, the dissolution court erred in including as marital property any child support arrearage owed to Diana.

---

1. We are aware, of course, that the inclusion of the post-separation value of the pension in the total value of the assets awarded to Diana impacted the other assets that were awarded to her, inasmuch as the trial court sought to achieve a particular proportional division.

2. We note, however, that the court reserved for another day "the issue of whether the nature of the custodial parent's interest in an arrearage changes after a non-custodial parent's duty to support ends." *In re Hambright,* 762 N.E.2d at 103 n. 4.

Not every error in the division of martial assets warrants reversal. *See Lulay v. Lulay,* 591 N.E.2d 154 (Ind.Ct.App.1992). We conclude that the error in this case was harmless. The court clarified that it considered assets and liabilities brought into the marriage, as well as inheritances received, as bases for deviating from the presumptive equal distribution. The court indicated that it was awarding Diana assets that were "substantially greater" than those awarded to Daniel. *Appellant's Appendix* at 15. Indeed, the value of the property awarded to Diana totaled $448,250, while the value of assets awarded to Daniel was $363,122. Therefore, with the arrearage included as a marital asset, Diana was awarded 57.5% of the marital estate. After removing the arrearage from the marital pot, Diana's award consists of 56.5% of the marital estate. In the context of the facts of this case, the difference in the parties' comparative shares (e.g., between Diana's share with and without including the arrearage) is de minimis. *See Bertholet v. Bertholet,* 725 N.E.2d 487 (Ind.Ct.App.2000). Finally, we note that the court awarded the arrearage entirely to Diana. We find the error to be harmless on the facts of this case, and therefore reversal is not warranted.

Judgment affirmed.

VAIDIK and BARNES, JJ., concur.