**Mark E. HICKS, Appellant–Petitioner,**

v.

**Tammy L. (Hicks) SMITH,
Appellee–Respondent.**

No. 54A01–0904–CV–189.

Court of Appeals of Indiana.

Jan. 19, 2010.

Mark Inman, Indianapolis, IN, Attorney for Appellant.

William A. Goebel, Thomas D. Sarver, Goebel Law Offices, Crawfordsville, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Mark Hicks appeals the trial court's judgment in favor of his ex-wife, Tammy Hicks, for child support arrearage. Hicks raises one issue for our review, which we restate as whether the trial court abused its discretion in awarding a judgment to Tammy. Concluding the trial court did not abuse its discretion, we affirm.

### Facts and Procedural History

Mark and Tammy are the parents of one son, Brandon, born May 2, 1985. The parties' marriage was dissolved by decree entered August 10, 1989. Custody of Brandon was deferred and the parties agreed to a joint custody arrangement pending a court order determining custody. Prior to the trial court's entry of an order regarding custody, Mark made numerous allegations against Tammy that required investigation and upset the joint custody agreement, delaying permanent resolution of the custody issues. On March 20, 1992, the trial court entered an order granting Tammy sole custody of Brandon effective March 22, 1992, giving Mark "reasonable and liberal visitation," appellant's appendix at 26, and ordering Mark to pay child support of $47.00 weekly beginning on March 27, 1992. Mark ab-

sconded with Brandon on or prior to March 22, 1992.

While Mark and Brandon were absent from the jurisdiction, Mark did not pay child support as required by the March 20, 1992, order. On Tammy's motion, the trial court entered an order on April 30, 1993, finding Mark in contempt, holding sanctions for the contempt finding in abeyance until Mark appeared in court, and entering a judgment representing arrearage to date and attorney fees in the total amount of $3,029.00. On December 8, 1994, the order was amended to reflect a further arrearage of $4,418.00, for a total judgment of $7,447.00.

Mark was charged with a crime for absconding with Brandon. He remained a fugitive from justice until he appeared in court on August 21, 2008, to answer the pending criminal charges. Tammy subsequently filed a motion with the dissolution court seeking a decision on the sanctions stayed in the April 30, 1993, order; a motion for proceedings supplemental to collect the December 8, 1994, judgment plus interest; and a verified petition for support arrearage accrued since the December 8, 1994, judgment. Mark filed a motion for relief from the December 8, 1994, judgment and a motion in opposition to Tammy's motion for support arrearage, alleging in both that since Brandon had been in his sole care and custody since March 22, 1992, Tammy would be unjustly enriched by an award of support arrearage.

Following a hearing at which the parties stipulated Mark had made no child support payments since March 20, 1992, and was fit and able to work during that time, the trial court sentenced Mark to 180 days in jail for the prior finding of contempt, subject to his ability to purge the contempt by paying the $7,447.00 judgment. The trial court ordered Mark to pay interest on the $7,447.00 judgment and be responsible for an additional arrearage from the date of the December 8, 1994 order to May 2, 2006, the date of Brandon's twenty-first birthday, of $27,965.00, plus interest. The trial court also denied Mark's motion for relief from judgment and motion in opposition to the petition for support arrearage, and further denied Mark's "request to have any and all money paid toward satisfaction of any of said judgments held in trust for the child." Appellant's App. at 65–66. Mark now appeals.

*Discussion and Decision*

### I. Standard of Review

Decisions regarding child support matters are within the sound discretion of the trial court. *Decker v. Decker,* 829 N.E.2d 77, 79 (Ind.Ct.App.2005). We reverse a child support decision only if there has been an abuse of discretion or the decision is contrary to law. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Norris v. Pethe,* 833 N.E.2d 1024, 1029 (Ind.Ct. App.2005).

### II. Nature of Arrearages

■ One of the purposes of child support is to provide a child with regular and uninterrupted support. *Rendon v. Rendon,* 692 N.E.2d 889, 897 (Ind.Ct.App. 1998). It has long been held the right to support lies exclusively with the child and a custodial parent holds the child support payments in trust for the child's benefit. *Bussert v. Bussert,* 677 N.E.2d 68, 71 (Ind. Ct.App.1997), *trans. denied; see also Cox v. Cox,* 25 Ind. 303 (1865). As a constructive trustee, the custodial parent is the trustee of the non-custodial parent's obligation to pay and may not contract away the benefits of the constructive trust. *In re Hambright,* 762 N.E.2d 98, 101–02 (Ind. 2002). In addition, once funds have accrued to the child's benefit, the trial court lacks the power to reduce, annul, or vacate

the child support order retroactively. Ind. Code § 31–16–16–6(a); *Whited v. Whited,* 859 N.E.2d 657, 661 (Ind.2007). Thus, a party is generally required to make support payments in the manner specified in the child support order until the order is modified or set aside. *Pickett v. Pickett,* 470 N.E.2d 751, 754 (Ind.Ct.App.1984).

There are two exceptions to the rule prohibiting retroactive modification of support already accrued, however. First, retroactive modification is allowed where the parties have agreed to and carried out an alternate method of payment which substantially complies with the spirit of the decree. *Whited,* 859 N.E.2d at 662; *see also Payson v. Payson,* 442 N.E.2d 1123, 1129 (Ind.Ct.App.1982) (payments made directly to mother and to third parties for rent instead of through the clerk's office substantially complied with the decree). Second, retroactive modification is allowed where the obligated parent, by agreement with the custodial parent, "takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time" that a permanent change of custody is effected. *Whited,* 859 N.E.2d at 662; *In re Marriage of Jackson,* 682 N.E.2d 549, 552 (Ind. Ct.App.1997) (trial court abused its discretion in awarding $16,000 arrearage to mother where mother had acquiesced in children residing with father for six years and provided very little financial support or care for the children herself). Neither of these exceptions apply to this case, as Mark failed to pay any support as ordered, *see Nill v. Martin,* 686 N.E.2d 116, 118 (Ind.1997) (noting parties may agree to alternate *method* of payment but may not agree to alternate *amount* of payment), and Tammy neither agreed to nor acquiesced in Mark's custody of Brandon.

Several cases have arisen over the years that have provided the opportunity to refine these general rules. In *Li-*zak *v. Schultz,* 496 N.E.2d 40 (Ind.1986), the mother, who was the custodial parent, died while the father owed a substantial arrearage on his child support obligation. The mother's husband, as personal representative of her estate, pursued the arrearage which existed on the date of her death and, eventually, a judgment in excess of $25,000 was entered against the father in favor of the estate. The father appealed, arguing because the mother was a fiduciary for the children, the arrearage was not an ordinary debt that could be collected by the personal representative. Before addressing the merits of father's argument, the court noted that father had been jailed repeatedly for failure to pay child support and had to be arrested to procure his attendance in court. *Id.* at 42. Describing the child's custodian as a trustee has "distant origins in our law" to differentiate between alimony—paid to the former spouse for his or her benefit—and child support—paid to the child's custodian regardless whether the custodian is also the child's parent. *Id.* (citing *Stonehill v. Stonehill,* 146 Ind. 445, 45 N.E. 600 (1896)). Using ·the term "trustee" describes the obligation of the custodian to seek enforcement of a child support order but is not meant to provide the non-paying parent an avenue to avoid paying child support. *Id.* The non-custodial parent has an ongoing obligation to pay child support and the custodian has an ongoing obligation to care for the child. A custodial parent who has advanced his or her own funds to provide food, clothing, and shelter to the child has discharged the trusteeship and "is entitled to collect the arrears from the non-custodïan." *Id.* The court rejected the father's attempts to avoid his support obligation by forcing the custodian to prove the shortfall caused by arrearage had been made up by the custodian's own funds and concluded the personal representative, who was also the children's cus-

todian, was entitled to collect the debt the father owed to the mother. *Id.* at 43.

In *Hambright,* the court considered whether a child support arrearage is an asset of the custodial parent's bankruptcy estate. When the mother, who was custodian of the parties' three children, declared bankruptcy, the father was in arrears in excess of $19,000. The trustee of the mother's bankruptcy estate sought to intervene in the paternity action between the parties, acknowledging the mother held current and future child support in trust, but claiming the past child support arrearage was the mother's property. Litigation costs, the possibility of collusion, and the interest of the state in seeing children compensated as if the family had remained intact were "practical considerations and basic policy concerns" considered by the court in determining the issue of whether and to what extent the custodial parent has covered the child support shortfall "is not open to litigation." 762 N.E.2d at 103. Relying on the basic principles set forth above that the right to support lies with the child and the custodial parent holds the support in trust for the child's benefit, the court concluded arrearages are held for the children and the custodial parent has no individual property interest in them; therefore, the trustee had no interest in them either. *Id.* at 103–04. In so holding, the court left open the issue of "whether the nature of the custodial parent's interest in an arrearage changes after a non-custodial parent's duty to support ends." *Id.* at 103 n. 4. Subsequently, this court applied the *Hambright* case in holding child support arrearages are not includable as marital property subject to division in a dissolution action. *Elkins v. Elkins,* 763 N.E.2d 482, 486 (Ind.Ct.App. 2002).

## III.   Award of Arrearage Judgment to Tammy

With these general principles in mind, we turn to the unique facts of this case. It is undisputed Mark made no payments toward his support obligation since March 22, 1992, his support obligation was never modified, and he owes a sizable arrearage. It is also undisputed Brandon was exclusively with Mark from March 22, 1992, until he reached the age of majority, and Tammy expended no money in direct support of Brandon during that time. Further, there is no evidence Mark did not care for or support Brandon while Brandon was in his care. Mark's custody of Brandon was in express disregard of a court order and was not agreed to by the parties.[1]

■ Although the court in *Hambright* did not decide the impact of emancipation on the nature of an arrearage, the court did acknowledge the potential for a distinction. *See* 762 N.E.2d at 103 n. 4. That a custodial parent holds child support payments in trust for the child makes sense during the child's minority because the minor child has an ongoing and regular need for support. Once the child is emancipated, however, the child has been supported. If there is an arrearage remaining, the custodial parent generally had to assume more than his or her share of supporting the child. Where there is clear evidence that because of the arrearage and the custodial parent's inability to make up the shortfall, the now-emancipated child has done without something that is still relevant—for instance, a college education—the child may arguably be entitled to some of the arrearage. However, for the most part, the arrearage should be available to compensate the custodial par-

---

1. That Mark is also subject to criminal sanctions for his conduct is not relevant to our consideration of his child support obligation.

ent for his or her expenses in assuming more than his or her share of the cost of supporting the child until his or her emancipation.

If this was a typical case involving an arrearage—that is, if Mark had accrued an arrearage while Tammy had Brandon in her custody until he was emancipated—it would be easy to affirm the trial court's order awarding a judgment for the arrearage to Tammy. On the other hand, if Mark and Tammy had agreed that Mark would take custody of Brandon in lieu of paying child support despite the trial court's order otherwise, it would be easy to reverse the trial court's order. However, neither situation is presented by these facts.

■ There are three people in this case to whom the arrearage could be awarded: Mark, who fully and completely supported Brandon; Tammy, who expended no money in directly supporting Brandon; and Brandon, who is now emancipated and was supported during his minority. Mark, despite having supported Brandon, is clearly not entitled to have the arrearage forgiven because of his wrongdoing in taking custody of Brandon in willful violation of a court order.[2] The child support was supposed to be paid for Brandon's benefit, but he was fully supported by Mark during his minority. Tammy did not provide support for Brandon but, being unaware of his whereabouts, also did not have the option to support him. Presumably, she maintained a home for Brandon should he be returned to her custody and made decisions for sixteen years based upon the possibility of his return. Mark cites *Thacker v. Thacker,* 710 N.E.2d 942 (Ind.Ct.App.1999), in support of his request to have the arrearage paid directly to Brandon. In *Thacker,* custody of the parties' two children was awarded to the

mother and the father was ordered to pay child support. For two years, the parties' son lived on his own. During those two years, the father reduced his support payment, and when the son returned to the mother's home, increased it again. We held the trial court erred in retroactively modifying the amount of child support to be paid by the father during that two year period, and therefore erred in finding no support arrearage. *Id.* at 944. We remanded to the trial court to calculate the amount of support arrearage and instructed that the arrearage be paid directly to the son because the son advanced his own funds to care for himself during the two-year period he was not living with the mother. *Id.* at 946. Unlike the son in *Thacker,* however, Brandon did not support himself during the time he was absent from Tammy's household and *Thacker* does not support Mark's request to order the arrearage paid directly to Brandon. In *Moody v. Moody,* 565 N.E.2d 388 (Ind. Ct.App.1991), we held a trial court erred in ordering the non-custodial parent to pay one-half of the back support he owed directly to an emancipated child. "Because [custodial parent] presumably expended her own funds through the years to care for the children, she is entitled to collect the arrears. It is not necessary that she prove she spent the amount of the back support on the children." *Id.* at 392.

■ No formal petition to modify child support was ever filed with the trial court. Pursuant to *Hambright,* once a support order is entered, proof a custodial parent has expended his or her own funds in the amount of the arrearage is not subject to debate, 762 N.E.2d at 103, and the trial court is prohibited from retroactively modifying support except in narrow circumstances not applicable here, *Whited,* 859

---

**2.** We note that Mark admits he owes the child support and disputes only the person to

whom he should pay the support. *See* Appellant's Brief at 11.

N.E.2d at 662. Mark is clearly not entitled to retain the money and pursuant to *Moody*, there is no authority for awarding it directly to Brandon. As between these three parties and under these circumstances, we cannot say the trial court abused its discretion in awarding a judgment on the arrearage to Tammy.[3]

### Conclusion

The trial court did not abuse its discretion in awarding a judgment on Mark's child support arrearage to Tammy and denying Mark's request to award the judgment directly to Brandon.

Affirmed.

MATHIAS, J., concurs.

DARDEN J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I respectfully dissent, but with the caveat that I fully agree that the trial court has the authority to find and hold Father in contempt of its order and to appropriately sanction him.

At the outset, I am of the opinion that Father's conduct was criminal; that he is undeserving of sympathy; that he deserves to be punished according to the law; and that his case deserves to be reviewed in a criminal court for possible criminal charges for absconding with Brandon in the face of the trial court custody order awarding custody to Mother. It appears that Father may be tried on a criminal charge in that regard, however, and the result will surely constitute his legal punishment for committing a criminal act. However, the case before us is one of family law, and as the majority notes, is not "a typical case involving an arrearage." Op. at 1174. Under the circumstances of this case, I find that the trial court's order—that Mother receive the funds as ordered—is error.

Mother argued to the trial court, as she does on appeal, that Father should be granted no relief based on "the Unclean Hands doctrine," (Tr. 9), because he "came into the courtroom on January 9, 2009 with unclean hands." Appellee's Br. at 11. Yet in exercising its equitable jurisdiction, a trial court must always "seek[ ] to do justice, and not injustice." 12 I.L.E. *Equity* § 16 (2009). Thus, "equity looks beneath rigid rules to find substantial justice and has the power to prevent strict rules from working an injustice." *Id.* at § 3 (citing *Doe v. Shults–Lewis Child and Family Servs., Inc.,* 718 N.E.2d 738 (Ind.1999)). Accordingly, as a matter of equity, the trial court must "do the right thing," regardless of the distasteful nature of Father's action.

The full financial impact of the trial court's February 2009 order is not clear from the majority opinion. In addition to the trial court's order that Father pay the December 1994 judgment amount of $7,447.00, Father was also ordered to pay $49,810.07 in accumulated interest thereon, for a total of $57,257.07, *and* interest accruing after May 2, 2006 (Brandon's twenty-first birthday) at a rate of 8% per annum. Also, in addition to the trial court's judgment for an arrearage from December 8, 1994 through May 2, 2006 in the amount of $27,965.00, it ordered Father to pay interest accruing from that date at 8% per annum. Thus, it appears that the trial court's February 2009 order will require that Father pay Mother more than $100,000.00 for his failure to comply with its order regarding child support.

---

**3.** Because Tammy is the aggrieved party, we would not remand as the dissent would for further proceedings because it would require her to incur further expense at Mark's hands. We do acknowledge, however, there is no perfect resolution to this situation.

Certainly the right to support lies exclusively with the child, and the custodial parent holds child support payments in trust for the child's benefit. *See Bussert,* 677 N.E.2d at 71. Accordingly, it seems to me that under the circumstances herein, there must be some evidence presented by Mother of actual expenses that she incurred as a result of her custodial parent status, *e.g.* expenses of her living arrangements during the relevant time period as related to accommodations for Brandon; her expenditures for food, medical, or educational expenses during the relevant time period on Brandon's behalf; etc. The majority postulates that Mother may have "maintained a home for Brandon should he be returned to her custody and made decisions for sixteen years based upon the possibility of his return," op. at 1174, but there is no evidence in this regard. At the outset of the hearing, the trial court offered Mother the opportunity "to present ... evidence." (Tr. 4). She did not, and the majority notes that the trial court heard no evidence whatsoever as to any expenditure by Mother on behalf of Brandon. ("[Mother] expended no money in support of Brandon" from March 22, 1992 until he reached the age of majority. Op. at 1173).

Although I cannot find that the trial court's order exceeds the parameters of black-letter law, likewise I cannot find it to be an equitable order based upon the circumstances here. It is undisputed that Father fed, clothed, sheltered, and cared for Brandon for all the years they were missing, and while it may not be proper to fully credit him for those expenses in the ultimate determination of his legal liability for child support, I find the order appealed to constitute an unwarranted windfall for Mother. As a result, I would reverse and remand for the trial court to hear evidence of actual expenses and/or expenditures that Mother incurred on Brandon's behalf as the custodial parent during the relevant time period, or to further consider Father's argument that past-due child support should be deposited into a trust for the benefit of Brandon.