# FOR PUBLICATION



**FILED**

Feb 24 2014, 9:14 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**C.M.**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE: PATERNITY OF J.M. | ) |
| | ) |
| C.M., | ) |
| | ) |
|     Appellant, | ) |
| | ) |
|        vs. | )    No. 18A02-1308-JP-684 |
| | ) |
| T.S., | ) |
| | ) |
|     Appellee. | ) |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Brian M. Pierce, Magistrate
Cause No. 18C02-0702-JP-50

February 24, 2014

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

C.M. ("Father") appeals the trial court's order denying his request for a hearing to determine the amount of his child support arrearage and the propriety of the garnishment of his inmate trust fund account. Father raises three issues, which we consolidate and restate as whether the court erred in denying his request. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

On February 23, 2007, T.S. ("Mother") filed a petition to establish support alleging that Father was the father of her two children, including J.M., and was not supporting his children, and requesting an order requiring Father to pay a reasonable amount of child support. The petition also indicated that Mother had signed an agreement authorizing the State of Indiana to establish and enforce a support order under the provisions of Title IV-D of the Social Security Act. On May 29, 2007, an order on support was entered which required Father to pay child support for J.M. in the sum of $31 per week and that an immediate income withholding order was "to be issued in this cause of action if possible." Appellee's Appendix at 1.

On June 10, 2011, Father, *pro se*, filed a verified motion to modify child support which stated that "[a]n order providing for the minor children's support has been previously entered by this court, and [Father] was ordered to pay $30.00 per week for each child."[1] Appellant's Appendix at 12. Father alleged that, "[a]round May, 2008, [Mother] lost custody of [B.M.] and [J.M.]," that in 2009 he had "signed temporary guardianship over to" the children's maternal grandparents, and that the maternal

[1] The court's May 29, 2007 order established Father's support order for J.M. to be $31 per week. The record does not contain a support order related to Father's child, B.M.

2

grandparents were still the legal guardians of B.M. and J.M.  Id. at 12-13.  Father alleged that he was currently incarcerated in the Indiana Department of Correction ("DOC") and requested the court to issue an order suspending or reducing his child support obligation.  An entry in the chronological case summary ("CCS") on June 13, 2011, shows that the trial court ordered that Father's support obligation be suspended until he is released from the DOC and that, upon release, he "is ordered to contact Title IVD Court at which time a hearing will be set on his motion for modification."  Id. at 4.

On April 30, 2013, Father filed a Motion for Hearing to Determine the Amount Owed in Support Arrearage and the Propriety of Trust Fund Garnishment.  In the motion, Father alleged in part that on April 29, 2008, B.M. was found to be a child in need of services, that the pre-dispositional report specifically found that Father had an inability to pay support and that justice would not be served by ordering payment, that he "was informed at that time that no child support/arrears would be sought against him," and that the children's maternal grandparents "have never sought enforcement of child support from Father and agreed that support would be held in abeyance until Father's release from incarceration."  Id. at 8-9.  Father alleged that, "[y]ears later, [he] was notified that his support obligation would be garnished from his prison wages," that support arrearages had occurred, that his child support obligation was suspended until his release from incarceration, and that "[r]ecently, the Family Support Division has used the original support order to garnish [his] Trust Fund Account . . . to apply toward the support arrearage."  Id. at 9.  He noted that the court had not issued a new order and no request for a new order was made to the court, and asserted that support arrearages should not

3

have accrued and that it was improper to force him to pay that which the court already determined he had an inability to pay. He requested a hearing to present evidence that the arrearage never should have accrued, to determine the amount of any arrearage owed, and to determine the monthly amount he should pay, if any, on this obligation. Alternatively, he requested that the court suspend the garnishment of his trust fund account until his release from incarceration. Father's earliest possible release date is March 14, 2022.

On July 9, 2013, the trial court issued an Order Denying Father's Request to Disallow Income Withholding Order. The CCS entry for the same date shows the Order "submitted and approved." Id. at 5. In the Order, the court found in part that, pursuant to the court's CCS entry on June 13, 2011, there is no current child support in the case until after Father is released from incarceration, that Father "does owe child support arrearages in this case," that "the Family Support Division is only enforcing IV-D arrears in this action," that Mother "stopped receiving TANF for the child on 03/01/2008," that it is in the best interest of the children for Father to pay on his support arrearage, and that, during his incarceration, the Family Support Division of the Prosecutor's Office will continue to enforce any child support arrears due and owing including enforcement by income withholding orders. Id. at 6. Father now appeals.[2]

---

[2] As noted in the concurring opinion authored by Judge Robb, the order being appealed was signed by a magistrate only and was not countersigned by the regular sitting judge. While the magistrate may not have had the authority to enter the order under Ind. Code § 33-24-5-8, Father does not argue on appeal that the order was defective because it contained the signature of the magistrate only and the record does not indicate that either party argued below that the order was defective for failing to contain the judge's signature or another indication the order was approved by the trial court. Accordingly, the parties have waived any challenge to the validity of the appealed order by failing to make any objection or

ISSUE AND DISCUSSION

The issue is whether the trial court erred in denying Father's motion for a hearing to determine the amount of his support arrearage and the propriety of the garnishment of his funds. Decisions regarding child support matters are within the sound discretion of the trial court. Decker v. Decker, 829 N.E.2d 77, 79 (Ind. Ct. App. 2005). We reverse a child support decision only if there has been an abuse of discretion or the decision is contrary to law. Id. Father appears to argue that his due process rights under Ind. Code §§ 31-16-15[3] were violated because he did not receive proper notice of an income withholding order. He maintains that the trial court abused its discretion in denying his motion because his initial child support order was objectively unreasonable and based on his pre-incarceration income even though he was incarcerated at the time of the initial

call the court's attention to the issue. See Tapia v. State, 753 N.E.2d 581, 588 (Ind. 2001) (noting that Tapia claimed that a magistrate who issued several orders in his case lacked authority over his post-conviction proceedings and holding that Tapia waived any claims in regards to the magistrate's authority because he failed to object); In re Involuntary Commitment of A.M., 959 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2011) (noting some irregularities with the final appealed order in the case and that the order of commitment was defective because it was signed only by a magistrate and holding that, the "defect notwithstanding, A.M. has waived any claim to reversible error because she did not raise it at the hearing or on appeal" and that "having failed to timely call the court's attention to the commitment order signed only by [the magistrate], A.M. has waived the issue for our review"); City of Indianapolis v. Hicks, 932 N.E.2d 227, 230-231 (Ind. Ct. App. 2010) (holding that, while a magistrate lacked the authority to enter an order granting a motion to correct error and thus that the order was defective for failing to contain the judge's signature or another indication it was approved or adopted by the trial court, the City waived any challenge to the validity of the order by failing to make a timely objection and observing that the Indiana Supreme Court "has long held that defects in the authority of a court officer, as opposed to the jurisdiction of the trial court itself, to enter a final order will be waived if not raised through a timely objection" and "[m]ore recently, this court has applied the same principle to civil proceedings and clarified that any objection to the authority of an adjudicative officer must be raised at the first instance the irregularity occurs, or at least within such time as the tribunal is able to remedy the defect") (citations omitted), reh'g denied, trans. denied; see also Sullivan v. City of Evansville, 728 N.E.2d 182, 187-191 (Ind. Ct. App. 2000) (holding that appellant, by failing to object to commissioners' authority before or at the administrative hearing, waived any challenge).

[3] Father cites to "Ind. Code § 35-16-15-7." See Appellant's Brief at 5. However, he appears to be referring to the statutory provisions set forth at Ind. Code §§ 31-16-15, including Ind. Code § 31-16-15-3.5 (prior version Ind. Code § 31-16-15-7).

order. Father also argues that garnishing his inmate trust fund account serves only to deprive him of basic necessities and that, if he does not receive enough money in a given month to satisfy the order, all money is seized and he is unable to provide for his basic needs. In its appellee's brief,[4] the State argues that Father was not denied due process and the fact that he is incarcerated does not relieve him of the obligation to continue to pay his child support arrearage. The State also concedes that, "[t]o the extent that the amount of child support arrearage is unclear or unfounded . . . , this matter may be remanded to determine the amount of arrearages." Appellee's Brief at 8.

To the extent Father argues that his initial child support order, entered on May 29, 2007, was unreasonable or based upon his pre-incarceration income, he has waived this issue by not appealing or challenging the order. Also, once funds have accrued to the child's benefit, the trial court lacks the power to reduce, annul, or vacate the child support order retroactively.[5] Hicks v. Smith, 919 N.E.2d 1169, 1171-1172 (Ind. Ct. App. 2010) (citations omitted), trans. denied. A party is generally required to make support payments in the manner specified in the child support order until the order is modified or set aside. Id. at 1172. We do not modify the trial court's initial child support order or the

---

[4] The State indicates that it is not directly representing Mother in this matter but is representing the interests of the State because Mother is a Title IV-D recipient. Father filed a Motion to Strike Brief of Appellee, which we deny in an order issued contemporaneously with this opinion.

[5] There are two exceptions to the rule prohibiting retroactive modification of support already accrued. Hicks v. Smith, 919 N.E.2d 1169, 1172 (Ind. Ct. App. 2010), trans. denied. First, retroactive modification is allowed where the parties have agreed to and carried out an alternate method of payment which substantially complies with the spirit of the decree. Id. Second, retroactive modification is allowed where the obligated parent, by agreement with the custodial parent, takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is effected. Id. The record does not support that either of these exceptions apply to this case.

arrearages Father accumulated as a result of that order and prior to the court's suspension of his child support obligation on June 13, 2011.

However, we also note that the CCS and the record show that the trial court never entered an income withholding order with respect to any arrearage and, in fact, never entered an order which required Father to make payments toward his arrearage. The June 13, 2011 entry in the CCS suspended only Father's child support obligation while he was incarcerated and did not address his arrearage, establish the amount of the arrearage, order that he make regular payments of a certain sum toward his arrearage, or enter an income withholding order with respect to any such arrearage. In addition, the income withholding order contained in the initial May 29, 2007 order related to Father's support obligation and not to any arrearage obligation. In fact, at the time of the original support order, no arrearage existed or had yet accumulated.[6]

Moreover, the trial court heard no evidence regarding Father's income or resources while incarcerated in the DOC or his ability to make payments toward his arrearage. The court did not establish (and the record does not reveal) the total amount of Father's accumulated arrearage, find that Father had the ability to make payments to an

---

[6] Ind. Code § 31-16-15-0.5(a) provides:

Except as provided in subsection (c), in any proceeding in which a court has ordered, modified, or enforced periodic payments of child support, the court shall include a provision ordering that child support payments be immediately withheld from the income of the obligor in an amount necessary to comply with the support order, including amounts for current child support obligations, child support arrearage, medical support, interest, and fees.

Further, while Ind. Code § 31-16-15-2.5 permits a Title IV-D agency to issue an income withholding order where such a withholding order has not been issued with a support order under Ind. Code § 31-16-15-0.5, the agency may do so only after providing notice pursuant to Ind. Code § 31-16-15-3.5.

7

extent towards the arrearage, determine a reasonable arrearage payment schedule, or enter an order setting forth an arrearage payment schedule upon which an income withholding order could be based. Cf. McGuire v. McGuire, 880 N.E.2d 297, 302 (Ind. Ct. App. 2008) (finding that the trial court "had evidence before it from which it could determine a reasonable weekly arrearage payment").

Based upon the record, we conclude that the trial court abused its discretion in denying Father's motion for a hearing to determine the amount of his child support arrearage and the propriety of the garnishment of his inmate trust fund account. We reverse and remand with instructions to conduct an evidentiary hearing for the purpose of determining Father's child support arrearage and his ability to pay, a determination of a reasonable arrearage payment schedule, and the entry of an income withholding order consistent with and subject to the limits set forth at Ind. Code § 24-4.5-5-105[7] and other limits imposed by law.

Reversed and remanded with instructions.

BARNES, J., concurs.

ROBB, J., concurs with separate opinion.

---

[7] Ind. Code § 24-4.5-5-105(3) (providing that the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment or support withholding shall not exceed 50%, 55%, 60%, or 65% of the individual's disposable earnings depending upon whether the individual is supporting a spouse or dependent child other than the spouse or child with respect to whose support such order is issued and whether the earnings are subject to garnishment or support withholding to enforce a support order with respect to a period which is prior to the twelve week period which ends with the beginning of such workweek).

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: PATERNITY OF J.M.       )
      )
C.M.,       )
      )
      Appellant,       )
      )
      vs.       )       No. 18A02-1308-JP-684
      )
T.S.,       )
      )
      Appellee.       )

**ROBB, Judge, concurring**

I concur in substance of the majority's opinion, but write separately to note that the order purportedly being appealed was signed only by a magistrate. Indiana Code section 33-24-5-8 provides:

> Except as provided under sections 5(14) and 9(b) of this chapter, a magistrate:
> * * *
> (2) may not enter a final appealable order unless sitting as a judge pro tempore or a special judge.

Indiana Code section 33-24-5-5(14) provides that a magistrate may "[e]nter a final order, conduct a sentencing hearing, and impose a sentence on a person convicted of a criminal

offense as described in section 9 of this chapter." And Indiana Code section 33-24-5-9

provides:

> (a) Except as provided under subsection (b), a magistrate shall report findings in an evidentiary hearing, a trial, or a jury's verdict to the court. The court shall enter the final order.
> (b) If a magistrate presides at a criminal trial, the magistrate may do the following:
>> (1) Enter a final order.
>> (2) Conduct a sentencing hearing.
>> (3) Impose a sentence on a person convicted of a criminal offense.

Clearly, this was not a criminal trial and there is no indication in the record that

Magistrate Pierce was sitting as a judge pro tempore or a special judge. Although the

order states that the "[f]indings and recommendations of the Court are hereby approved

and so ordered[,]" it is signed by "Brian Pierce, Magistrate," and there is no

countersignature by the regular sitting judge. Appellant's Appendix at 6. By statute, the

magistrate lacked authority to enter a final appealable order on his own.

Pursuant to Appellate Rule 5(A), this court has jurisdiction "in all appeals from

Final Judgments of Circuit, Superior, Probate, and County Courts . . . ."[8] I recognize that

in City of Indianapolis v. Hicks, 932 N.E.2d 227 (Ind. Ct. App. 2010), an opinion that I

authored, this court addressed both procedurally and substantively an order granting a

motion to correct error and reinstating a negligence suit. The original order was signed

only by a magistrate. The trial judge later signed a nunc pro tunc order to retroactively

countersign the order. We held there was no error in this procedure because the CCS

entry made contemporaneously with the order signed by the magistrate stated that the

---

[8] The court also has jurisdiction over appeals of interlocutory orders described in Appellate Rule 14 and appeals from agency decisions. Ind. Appellate Rule 5(B) and 5(C).

"Court approves granting Plaintiff's motion to correct error . . . ." Id. at 232-33. No such written memorial of the trial judge adopting the magistrate's order in any way exists in this case. The Hicks opinion also includes a discussion of waiver, concluding that the defendant's "failure to timely object waived any challenge based on [the magistrate's] authority." Id. at 231. We also stated, however, that whether or not the issue was waived, the trial court's nunc pro tunc was appropriate and there was no error. Id. The waiver discussion was unnecessary, and given the resolution of the nunc pro tunc issue, there was a final appealable order invoking this court's jurisdiction.

In Floyd v. State, 650 N.E.2d 28 (Ind. 1994), cited by Hicks, our supreme court addressed whether the court officers hearing cases in several consolidated appeals were properly appointed as judges pro tempore or special judges. The court held that "the failure of a party to object at trial to the authority of a court officer to enter a final appealable order waives the issue for appeal." Id. at 32. I note first that none of the appealed cases in Floyd concerned magistrates acting in the capacity of a magistrate and that the objection the supreme court indicated should have been made therein was to the appointment of judicial officers for each case and therefore to their authority to even hear the case. Here, there is no question that the magistrate had the authority to hear the matter in question and there would have been no reason to object. I also note that, while Floyd disapproved several opinions of this court which had dismissed appeals for lack of a final appealable order in the same circumstances, it specifically cited Senior Judge Buchanan's dissents in two of those cases as "correct statements of the law and precedent in this regard." Floyd, 650 N.E.2d at 33 (citing Scruggs v. State, 609 N.E.2d 1148 (Ind.

11

Ct. App. 1993) and <u>Hill v. State</u>, 611 N.E.2d 133 (Ind. Ct. App. 1993)). In both those cases, Judge Buchanan dissented from the dismissals, stating, "I cannot agree with the majority that there is no appealable judgment in this case. <u>Unlike the situation in which a master commissioner's findings are not adopted by a judicial officer</u>, irregularities in the appointment of a special judge do not affect the finality of a judgment." <u>Hill</u>, 611 N.E.2d at 133 (emphasis added); <u>see also</u> <u>Scruggs</u>, 609 N.E.2d at 1151. The situation we have here is precisely the converse situation Judge Buchanan referenced: a master commissioner's findings were not adopted by a judicial officer, and by implication, the finality of the judgment <u>is</u> affected.

I also recognize the holdings of the cases cited by the majority supporting the idea that the parties have waived any challenge to the validity of the appealed order by failing to object. <u>See</u> slip op. at 5 n.2. Perhaps our caselaw has developed such that parties <u>can</u> waive the requirement of a countersignature, but I question whether they should be able to. The legislature defines the authority of a judicial officer. Magistrates have not been granted the authority to issue a final order in this circumstance, and trial judges have been given the responsibility to review and approve magisterial action. A trial judge's act of countersigning a recommendation made by a magistrate may be pro forma, but we are courts of rules and we should follow those rules regardless of what the parties do or do not do. I do not believe a party can grant authority the legislature has not provided or confer jurisdiction on this court by simply failing to object. To the extent the cases cited by the majority have held otherwise, I disagree with those cases. To fail to insist on judicial oversight can and has caused parties to experience the downside of that failure.

12

However, since the resolution of this case, in essence, provides the same result as suspending this appeal pending the regular trial judge's review of the magistrate's recommendation, I concur with majority's resolution of the issue.