## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

May 06 2020, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cody Cogswell
Cogswell & Associates, LLC
Fishers, Indiana

ATTORNEY FOR APPELLEE

Rodney T. Sarkovics
Sarkovics Law
Carmel, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kejbir Singh Bal, <br> *Appellant-Defendant,* <br><br> v. <br><br> Shivali Bal, <br> *Appellee-Plaintiff* | May 6, 2020 <br><br> Court of Appeals Case No. <br> 19A-DC-2137 <br><br> Appeal from the <br> Hamilton Superior Court <br><br> The Honorable <br> David K. Najjar, Judge <br><br> Trial Court Cause No. <br> 29D05-1712-DC-11221 |

**Vaidik, Judge.**

# Case Summary

[1] Kejbir Singh Bal ("Husband") appeals the trial court's decree dissolving his

marriage to Shivali Bal ("Wife"). Husband argues that the trial court erred by

including certain property in the marital pot and in determining Husband's weekly income for purposes of child support. We affirm.

# Facts and Procedural History

[2] Although the dissolution decree covers many topics, this appeal concerns only a few of them. As such, we set forth the facts that are relevant to the issues that the parties raise on appeal. Husband and Wife were married in May 2010. Two children were born during the marriage: R.B. in 2011 and S.B. in 2016.

[3] In 2012, Husband received approximately $187,000 from his father for promising to take care of his parents for the rest of their lives. Husband later testified that out of the money he received from his father, "there was $60,000 that was supposed to be split between [Husband] and [Husband's] two sisters." Tr. p. 117. In 2013, Husband started a trucking business, Bal Trucking. Over time, his business grew to the point where Husband was earning approximately $1,300-$1,400 per week.

[4] The parties purchased a Lexus 350 in 2013, using $46,000 of the money given to Husband by his father. In 2014, the parties used $54,000 of the money to buy the marital residence. *See id.* at 118.

[5] Husband's trucking business started to decline in 2015. Eventually, Husband's truck deteriorated beyond repair, causing him to switch and work as a dispatcher in the trucking business.

[6] By October 2017, the marriage had begun to fall apart, and Husband asked Wife to quitclaim her interest in the marital residence. Wife did so, and Husband transferred ownership of the house to himself and his sister, Satinderbir Kaur Nijjer. That December, Wife moved out of the marital residence and filed for divorce.

[7] Both parties were represented by attorneys throughout the dissolution proceedings. Leading up to the final hearing, Wife attempted to conduct discovery, but Husband failed to respond to her requests. In July 2018, Wife filed a motion to compel discovery, which the trial court granted. When Wife received Husband's responses, they were either "vague" or provided "incomplete information." Appellant's App. Vol. II p. 13.

[8] In April 2019, the trial court held the final hearing. The parties each submitted marital-estate summaries, showing proposed values for their marital assets. Both parties included the equity in the marital residence and the Lexus on their respective summaries. *See* Exs. 5, D. The parties also agreed on the value of those assets: the equity in the marital residence was $47,732, and the Lexus was valued at $14,000. *See* Exs. 5, D; *see also* Tr. pp. 31-32, 152.

[9] Another issue was determining Husband's weekly income for the purposes of child support. Wife testified that Husband was paid $343 a week for "taking care of his mom" and earned income as a trucking dispatcher. *Id.* at 53. Wife said that based on the deposits and withdrawals from Husband's personal and business bank accounts, she and her attorney determined that Husband's

average weekly self-employment income was $2,201.35. *See id.* at 62-75. Wife explained that because Husband did not provide documentation of his income, she and her attorney had to use "the bank statements" to determine his income. *Id.* at 97. Wife also submitted a proposed child-support worksheet that recommended Husband pay $234 a week to Wife in child support. *See* Ex. 21.

[10] Husband testified that his total income was "close to [$]3,000 a month" or "a little under 800 a week." Tr. p. 169. Husband said that he makes "about $540 approximately bi-weekly" for taking care of his mother and "made $19,000 last year" "from trucking." *Id.* at 174. Husband did not submit a child-support worksheet but asserted that child support should be a "wash" and said that he "can't afford $234" a week in child support. *Id.* at 171-72.

[11] In July 2019, the trial court issued a decree of dissolution. The trial court followed the parties' marital-estate summaries and found that the equity in the marital residence and the Lexus were marital property. As for the money given to Husband by his father and the alleged debt to his sisters, the trial court explained:

> 54. Husband received $187,000.00 during the marriage in 2012 from his Father. Husband testified that the money he received was to be used for the care and support of Husband's Father and Mother. He was also to use $40,000.00 to pay each of his two (2) sisters $20,000.00; $20,000.00 to keep himself.

> *****

56. Husband's sisters are not demanding payment, no terms apply for repayment and for several years Husband made no payments to his sisters. Just before and during the divorce proceedings, Husband only then began to claim that he was paying his sisters back the $20,000.00 each.

Appellant's App. Vol. II pp. 18-19, 24. Accordingly, the trial court did not include the $40,000 that Husband alleged he owed to his sisters in the marital estate as marital debt. After determining the value of the marital estate, the trial court awarded 60% to Wife and 40% to Husband. The trial court found that an unequal distribution of the marital estate was appropriate because there were "multiple instances of disposition of assets on the part of Husband to the detriment of Wife." *Id.* at 21 (Finding M). Husband was assigned the equity in the marital residence ($47,732.00) and the Lexus ($14,000.00) and ordered to pay Wife an equalization payment of $79,579.89. *See id.* at 24.

[12] Regarding Husband's weekly income, the trial court found:

Z. Husband testified that he was earning approximately $800.00 per week. This figure is not supported by the evidence showing tens and hundreds of thousands of dollars being deposited into his accounts and then being spent on personal items. Wife argues that Husband's income for child support purposes is over $2,500.00 per week. This figure does not appear to hold up against the evidence of Husband's business expenses. While the Court is leery of accepting evidence of Husband's business expenses at face value, given his repeated discovery violations and multiple instances of dissipating the marital estate, the Court cannot ignore business realities and discount any and all expenses except for self-employment taxes.

*Id.* at 25.  Accordingly, the trial court found that based on Husband's education, experience, work history, and other factors related to his income, his weekly income was $1,750.00 per week.  The court then set Husband's child support obligation at $234.00 per week.

Husband now appeals.

# Discussion and Decision

Where, as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review.  *Barton v. Barton*, 47 N.E.3d 368, 373 (Ind. Ct. App. 2015), *trans. denied*.  We determine first if the evidence supports the findings and second whether the findings support the judgment.  *Id.*  The trial court's findings and conclusions will be set aside only if clearly erroneous.  *Id.*  We neither reweigh the evidence nor reassess witness credibility.  *Id.*  Instead, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them.  *Id.*

# I. Property in the Marital Pot

Husband contends that the trial court erred when it included two assets—the marital-residence equity ($47,732) and the Lexus ($14,000)—in the marital pot. He asks us to remand with instructions that the marital-residence equity and the Lexus be removed from the marital pot.

It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the

marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014). For purposes of dissolution, property means "all the assets of either party or both parties." Ind. Code § 31-9-2-98. The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide property. *Falatovics,* 15 N.E.3d at 110. Indiana's "one pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. *Id.* While the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

[17] Husband specifically argues that the marital residence and the Lexus were purchased using money that his father gave him, and therefore these assets cannot be included in the marital pot. Wife argues that any error of which Husband now complains was invited by him because he included the assets in his marital-estate summary. Husband does not respond to this argument in his reply brief. We fail to see how the trial court erred in including the assets—which were acquired during the marriage—in the marital pot. *See* I.C. 31-15-7-4(a). But even if it was error, we agree that Husband invited that error. The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. *Balicki v. Balicki*,

837 N.E.2d 532, 541 (Ind. Ct. App. 2005), *trans. denied*. Husband's marital-estate summary (Exhibit D) listed the equity in the marital residence and the Lexus as marital assets subject to division. The trial court was entitled to rely on Husband's representation that these assets were marital property since he identified them as such. Under these circumstances, Husband cannot now ask for a reconsideration of what property went into the marital pot with respect to the marital-residence equity and the Lexus.[1,2]

# II. Child Support

[18]     Husband also argues that the trial court erred in determining his weekly income and ordering him to pay $234 per week in child support.[3] He claims that the court's finding that his weekly income was $1,750 "comes from nowhere." Appellant's Br. p. 17. Decisions regarding child support are within the sound discretion of the trial court. *Hicks v. Smith*, 919 N.E.2d 1169, 1171 (Ind. Ct. App. 2010), *trans. denied*. We reverse a court's determination regarding child

---

[1] Husband also argues that the trial court erred when it failed to include the $40,000 that he allegedly owes to his sisters as marital debt. The trial court found that "Husband's sisters are not demanding payment" and that Husband only began to claim that he needed to repay his sisters "just before and during the divorce proceedings." Appellant's App. Vol. II p. 19 (Finding 56). Husband's argument is therefore a request to reweigh his credibility, which we do not do on appeal. *See Barton*, 47 N.E.3d at 373.

[2] In his reply brief, Husband seems to challenge the trial court's 60-40 distribution of the marital estate. Appellant's Reply Br. p. 6. He has, however, waived this argument by failing to include it in his opening brief. *See U.S. Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 797 n.5 (Ind. 2000) ("[A]n argument raised for the first time in a reply brief is waived.").

[3] It is not clear how the trial court landed on a support obligation of $234 per week using $1,750 as Husband's weekly income, when Wife also landed on $234 using $2,500+ as Husband's weekly income. In any event, Husband does not argue that $234 is incorrect if his income is $1,750. He argues only that $234 is incorrect because his income is not $1,750.

support only if there has been an abuse of discretion or the determination is contrary to law. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[19] Here, Wife presented evidence that Husband's weekly income was approximately $2,500: Husband received $343 for taking care of his mother and $2,201.35 from his trucking business. Husband testified that his weekly income was $800. The trial court did not adopt either party's calculation. The trial court explained that it was "leery" of Wife's estimate of Husband's income because it failed to account for his business expenses and that Husband's estimate of $800 was not supported by evidence showing that he spent a large amount of money on personal items. Appellant's App. Vol. II p. 25 (Finding Z). Instead, the trial court found that given Husband's education, experience, work history, and other factors related to his income, his average weekly income was $1,750.00. *Id.* Furthermore, Husband repeatedly committed discovery violations, refused to provide documentation showing his income, and did not complete a child-support worksheet. *See Trabucco v. Trabucco*, 944 N.E.2d 544, 552 (Ind. Ct. App. 2011) ("In light of Husband's failure to present evidence to the trial court adequately documenting his actual income, we cannot conclude that the trial court's use of income averaging was clearly erroneous."), *trans. denied*. For all of these reasons, we cannot say that attributing an average $1,750 weekly income to Husband was clearly erroneous.

[20] Affirmed.

May, J., and Robb, J., concur.